**EXHIBIT A**

**SUMMONS - CIVIL**
JD-CV-1 Rev. 2-22
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

Instructions are on page 2.

| For information on ADA accommodations, contact a court clerk or go to: www.jud.ct.gov/ADA. | STATE OF CONNECTICUT SUPERIOR COURT www.jud.ct.gov |



- [ ] Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.
- [X] Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.
- [ ] Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk (Number, street, town and zip code) | Telephone number of clerk | Return Date (Must be a Tuesday) |
|---|---|---|
| 123 Hoyt Street, Stamford, Connecticut 06905 | ( 203 ) 965 – 5308 | 05/09/2023 |

| [X] Judicial District     G.A. | At (City/Town) | Case type code (See list on page 2) |
| [ ] Housing Session  [ ] Number: | Stamford | Major: C    Minor: 90 |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented (Number, street, town and zip code) | Juris number (if attorney or law firm) |
|---|---|
| Brown Rudnick LLP, 185 Asylum Street, Hartford, Connecticut 06103 | 403862 |

| Telephone number | Signature of plaintiff (if self-represented) |
| ( 860 ) 509 – 6500 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.  [X] Yes  [ ] No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book (if agreed) dkletter@brownrudnick.com |

| Parties | Name (Last, First, Middle Initial) and address of each party (Number; street; P.O. Box; town; state; zip; country, if not USA) | |
|---|---|---|
| First plaintiff | Name: Daniel Lee<br>Address: 11 Wyngate Road, Greenwich, Connecticut 06830 | P-01 |
| Additional plaintiff | Name:<br>Address: | P-02 |
| First defendant | Name: Stephen Swentzel<br>Address: 325 North End Avenue, APT 4L, New York, New York 10282 | D-01 |
| Additional defendant | Name: Richard Golaszewski<br>Address: 212 Central Avenue, Rye, New York 10580 | D-02 |
| Additional defendant | Name: Stephen Swentzel, Richard Golaszewski c/o Secretary of the State c/o Secretary<br>Address: 165 Capital Avenue, Hartford, CT 06103 | D-03 |
| Additional defendant | Name:<br>Address: | D-04 |

| Total number of plaintiffs: 1 | Total number of defendants: 2 | [ ] Form JD-CV-2 attached for additional parties |

**Notice to each defendant**

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.
2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.
3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.
4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.
5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed (Sign and select proper box) | [X] Commissioner of Superior Court | Name of person signing |
| 03/10/2023 | /s/ Dylan Kletter | [ ] Clerk | Dylan P. Kletter |

If this summons is signed by a Clerk:
a. The signing has been done so that the plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law.
c. The court staff is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint.

| For Court Use Only |
| File Date |

| I certify I have read and understand the above: | Signed (Self-represented plaintiff) | Date | Docket Number |

Page 1 of 2

| | |
|---|---|
| RETURN DATE: MAY 9, 2023 | SUPERIOR COURT |
| DANIEL LEE | J.D. OF STAMFORD |
| Plaintiff, | AT STAMFORD |
| v. | |
| RICHARD GOLASZEWSKI AND STEPHEN SWENTZEL | MARCH 10, 2023 |
| Defendants. | |

## COMPLAINT

Plaintiff Daniel Lee complaining of the Defendants Richard Golaszewski and Stephen Swentzel allege as follows:

### INTRODUCTION

1. Greed is a powerful force. This dispute arises out of Defendants Golaszewski and Swentzel's betrayal of their partner, the Plaintiff, Mr. Daniel Lee, whom Defendants surreptitiously ousted from a joint venture and/or partnership – interchangeably known as "Project Buffalo Point," "Project Fremen," and "Project Candle" – shortly prior to securing a lucrative deal to build a business with Hunter Point Capital, who estimated that the three partners would earn *$848 Million* over a ten-year period. Mr. Lee brings this suit to hold Defendants accountable for their treachery and to recover hundreds of million dollars in damages.

2. Mr. Lee, a private equity executive with substantial experience in fundraising and investor relations, proposed to enter into a partnership/joint venture with Mr. Golaszewski and Mr. Swentzel to build a market leading "firm" in the preferred equity and Net Asset Value

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

("NAV") financing space. Recognizing the tremendous financial benefits of Mr. Lee's proposal, Mr. Golaszewski and Mr. Swentzel quickly agreed to enter into the partnership/joint venture, which was then known as "Buffalo Point." Mr. Lee then leveraged the many relationships he had formed throughout his career and pitched Buffalo Point to potential strategic partners.

3. Ultimately, the three partners agreed to pursue partnering Buffalo Point with Hunter Point Capital, a sophisticated and well-respected New York-based private equity firm founded by Bennett Goodman. After nearly a year of discussions and an extremely detailed and sophisticated financial analysis, Hunter Point Capital estimated that the three founding partners of Buffalo Point would earn $848 Million over a ten-year period, which comprised of $380 Million of cash flows and $468 Million of equity value creation.

4. However, when the fruits of Mr. Lee's labor were to finally be realized and when the substantial value of Buffalo Point became apparent, Defendants Golaszewski and Swentzel engaged in a clandestine scheme to oust Mr. Lee from Buffalo Point. By doing so, Defendants Golaszewski and Swentzel stabbed their partner in the back to fatten their own pockets.

5. After committing this betrayal, Defendants Golaszewski and Swentzel then took steps to cover their tracks by intentionally destroying and spoliating as much of the evidence of their communications with Mr. Lee about Buffalo Point as they could, including their communications with Mr. Lee that were conducted on the Signal messengering app service.

6. Mr. Lee brings this action to recover the hundreds of millions of dollars in damages that he has lost due to the treachery of Defendants Golaszewski and Swentzel.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

## THE PARTIES

7. Plaintiff Daniel Lee is an individual who resides at 11 Wyngate Road, Greenwich, Connecticut 06830.

8. Defendant Stephen Swentzel is an individual who resides at 325 North End Avenue, APT 4L, New York, New York 10282. At all relevant times herein, Defendant Swentzel transacts business within the state. At all relevant times herein, Defendant Swentzel's tortious conduct, as described more fully below, also was committed within the state.

9. Defendant Richard Golaszewski is an individual who resides at 212 Central Avenue, Rye, New York 10580. At all relevant times herein, Defendant Golaszewski transacts business within the state. At all relevant times herein, Defendant Golaszewski's tortious conduct, as described more fully below, also was committed within the state.

## FACTS RELEVANT TO ALL CLAIMS

I. **Mr. Lee Enters into a Partnership/Joint Venture with Golaszewski and Swentzel to Form a Market Leader in the Preferred Equity and NAV Financing Business**

10. In 2021, Mr. Lee, Mr. Golaszewski and Mr. Swentzel were employed by the international private equity firm 17Capital LLP ("17Capital"). Mr. Lee served as the Head of Fundraising and Investor Relations for the North American segment of 17Capital's business, and Mr. Golaszewski and Mr. Swentzel served as Managing Directors.

11. Mr. Lee began developing a plan to form a partnership/joint venture among the three members to combine Mr. Lee's broad private markets fundraising and investor relations expertise with Golaszewski and Swentzel's transactional background to build and launch a market leading business in the preferred equity and NAV financing space.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

12. Mr. Lee's goal was to utilize the relationships that he had developed in his career to have the partnership/joint venture team up with a new private equity firm or capital partner.

13. After Mr. Lee pitched the proposed partnership/joint venture to Mr. Golaszewski and Mr. Swentzel, the parties all agreed to enter into the partnership/joint venture to effectuate Mr. Lee's plan, which was then referred to by them as "Project Buffalo Point."

14. During this time, the partners had multiple meetings and dinners to discuss their "partnership." The three partners also jointly drafted pitch materials to market to prospective private equity firms, divided up roles and responsibilities, and drafted talking points and assigned speaking roles. Notably, in those drafts, the three partners agreed to have Mr. Lee "quarterback" the discussions. In those materials, the three partners also explicitly stated that they believed there was a market opportunity for them to "launch[] a portfolio and GP finance firm…"

II. **Mr. Lee Promotes Buffalo Point to Prospective Strategic Partners**

15. Soon after the Buffalo Point partnership/joint venture was formed, Mr. Lee began using his contacts to seek out other private equity firms to find a strategic partner for Buffalo Point. For example, in April 2021, Mr. Lee arranged meetings for the three partners with another private equity firm to discuss the "Buffalo Point" venture.

16. In May 2021, Mr. Lee had a meeting with Mr. Michael Arpey, the President of Hunter Point Capital, a sophisticated and well-regarded New York private equity firm founded by Bennett Goodman. Mr. Arpey has been a friend and trusted confidante of Mr. Lee for over a decade. During that meeting, Mr. Lee and Mr. Arpey discussed a wide range of topics. In response to an inquiry by Mr. Arpey, Mr. Lee described in general terms the Buffalo Point business opportunity and Mr. Arpey expressed an interest in learning more.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

4

17. Thereafter, three partners represented to Hunter Point that the Buffalo Point team consisted of three founding partners, *i.e.*, Messrs. Lee, Golaszewski and Swentzel, who collectively have experience across diverse private markets disciplines all strongly relevant to preferred equity and NAV financing for private equity portfolios.

18. The three partners further represented to Hunter Point that Buffalo Point brought demonstrable experience in sourcing and structuring superior risk adjusted exposures in preferred equity and credit transactions focused on private equity market counterparties.

19. The three partners represented to Hunter Point that their plan would create a multi-billion-dollar market leader in the preferred equity and NAV financing market.

20. During a subsequent conversation about Buffalo Point, Mr. Arpey told Mr. Lee that he would introduce him to Hunter Point's CEO, Mr. Avi Kalichstein. In May 2021, Mr. Lee went to Hunter Point's office to meet with Mr. Kalichstein and discussed the portfolio finance and NAV lending space, as well as the Buffalo Point business opportunity.

21. In the ensuing months, Mr. Lee, Mr. Golaszewski and Mr. Swentzel remained in constant contact concerning the Buffalo Point partnership/joint venture. By January of 2022, the efforts to team up Buffalo Point with Hunter Point continued in earnest. During this time, Mr. Lee remained the lead representative, regularly communicating with Hunter Point. Mr. Lee leveraged his relationships to coordinate two meetings with Hunter Point. Mr. Lee met with Mr. Arpey and Mr. Kalichstein to discuss next steps for advancing discussions around Buffalo Point. At Mr. Lee's urging, Mr. Golaszewski attended additional meetings to meet Hunter Point for the first time and continue the Buffalo Point discussions.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

22. After the in-person meetings were productive and successful, Mr. Lee arranged a Zoom meeting among himself, Mr. Golaszewski, Mr. Swentzel and Mr. Kalichstein to discuss logistics and next steps regarding the proposed strategic partnership with Buffalo Point.

23. In February 2022, Mr. Lee, Mr. Golaszewski and Mr. Swentzel met with Mr. Kalichstein over dinner in New York City to continue the discussions regarding Buffalo Point and Hunter Point and began to form more granular details of a business plan. Mr. Lee then spoke with Mr. Arpey and, on February 10, 2022, reported back to Golaszewski and Mr. Swentzel that "Avi loved us" and that the three partners should put together a proposal "asap."

### III. The Buffalo Point Team Retains the Law Firm of Clifford Chance to Navigate Their Exit with 17Capital and Their Partnership with Hunter Point Capital.

24. After the February 2022 meetings with Hunter Point Capital that Mr. Lee arranged were fruitful, the members of the Buffalo Point partnership/joint venture sought legal counsel with respect to their exit from 17Capital and the new strategic partnership with Hunter Point Capital. Mr. Lee then contacted Michael Sabin of the global law firm of Clifford Chance.

25. In internal Clifford Chance emails, Mr. Sabin informed colleagues that Buffalo Point was "interested in help to negotiate separation and also the terms of them joining HPC, likely a negotiated house/team contractual deal on share of net fees, carry and franchise value."

26. In further internal correspondence, Mr. Sabin advised colleagues that the new matter concerned the "representation of a team of professionals leaving 17Capital and joining Hunter Point Capital," and that the representation would be "jointly" and "collectively."

27. Clifford Chance's fee estimate for the Buffalo Point partners was $90,000, which, in law firm parlance, was to be billed as one client under one client matter number. As a result, the three partners agreed to share equally in the fees and expenses for Clifford Chance's services.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

6

28. On February 21, 2022, Lee and Defendants Golaszewski and Swentzel jointly and collectively engaged Clifford Chance with Mr. Sabin as their lead legal counsel.

29. Pursuant to the terms of the executed February 21, 2022 Engagement Letter, Clifford Chance agreed to "advise the three of you in connection with the review and advice in connection with the potential separation from 17Capital and future management equity and governance arrangements with Hunter Point Capital, to be known as 'Project Fremen'...."

30. Under the terms of the engagement letter, Clifford Chance further acknowledged that "we will be taking instructions from one single representative of the partners," and that "[i]nitially Dan Lee will be such representative...."

31. After the Buffalo Point team jointly and collectively engaged Clifford Chance, Mr. Lee relayed to his other two partners that their communications were "under privilege."

### IV. Hunter Point Capital Estimates that the Founding Members of the Buffalo Point Will Earn a Total of $848 Million in Cash and Equity Over a Ten-Year Period

32. Contemporaneous with the Buffalo Point team jointly and collectively engaging Clifford Chance, and recognizing the increasing probability of the strategic partnership, Hunter Point Capital code-named the discussions with Buffalo Point as "Project Candle."

33. Mr. Golaszewski thereafter started a physical "candle notebook" with respect to memorializing the "partners'" discussions and strategy for the Buffalo Point business model.

34. Mr. Golaszewski also created and served as the administrator of a private group chat with the three partners named "candlelit dinners" on the Signal messaging app service.

35. On February 18, 2022, the three partners had a call to ensure that they were all in alignment and "make sure we all know what we're doing and set some goals."

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

7

36. On February 19, 2022, Mr. Golaszewski began to circulate drafts to Mr. Lee and Mr. Swentzel of the partners' investment strategy to be shared with Hunter Point. Notably, Mr. Golaszewski entitled these materials "Project Candle – Investment Opportunity."

37. On March 3, 2022, the three partners had dinner with Mr. Kalichstein and Hunter Point's founder, Mr. Goodman, at the Porter House Bar and Grill in New York to discuss the partnership between Buffalo Point and Hunter Point.

38. In an email after the meeting, Mr. Kalichstein enthusiastically stated that Hunter Point is "excited about the prospect of building a class-leading business together."

39. A few days later, Mr. Goodman, the iconic and well-respected founder of Hunter Point, penned a rousing email to all three of the members of Buffalo Point that the parties were going to build a "first class" franchise together, that he was "highly confident we will raise a lot of capital," that the partnership with Buffalo Point was their "top priority," and that he was "very excited about the journey ahead with you as our partners."

40. On April 10, 2022, Hunter Point utilized its skill and experience in business valuation to provide the Buffalo Point team with a financial proposal for the planned strategic partnership. The key focus of the proposal were the economic incentives for the "Candle Management" team, which was defined as "the three existing management team members," *i.e.*, Mr. Lee, Mr. Golaszewski and Mr. Swentzel. Hunter Point's proposal treated "the three existing management team members" equally with respect to compensation, share of net fees, and equity.

41. In total, Hunter Point rigorously modeled that the overall value from cash flows and equity value creation to the three founding partners over the first five years would be *$220 Million* and in ten years would be an astounding *$848 Million*. Under either of Hunter Point's

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

8

analyses, Mr. Lee's share would be substantial. After 5 years, Mr. Lee's share would be approximately *$73 Million* and, after 10 years, his share would be approximately *$282 Million*.

42. The financial analysis supporting Hunter Point's proposal included analyses related to profit and loss, cash flow models, expenses, net fees and capital investment.

43. Notably, the detailed financial analysis of Hunter Point's proposal was prepared by its Head of Investments, Melvin Hibberd, who earned an MBA from Harvard Business School and previously worked at some of the largest financial institutions in the world, including private equity firms such as The Blackstone Group and KKR & Co., as well as Goldman Sachs. At Blackstone, Mr. Hibberd was a Managing Director and a member of the Investment Committee of their "GP Stakes" business, one of the largest in the world tasked with valuing private equity and alternative asset management firms and executing investments in them.

44. Indeed, there are few individuals and fewer investment firms in the world that are more qualified to assess the value of alternative investment management firms and franchises like the Buffalo Point venture than Melvin Hibberd and Hunter Point. In their own words, Hunter Point "is an independent investment firm seeking to make minority investments in middle-market alternative asset managers across private equity, credit, real estate, and infrastructure in North America, Europe, and Asia. We are dedicated to pursuing long-term strategic partnerships with proven general partners ("GPs") who are poised to build enduring franchises and define the next generation of leading investment firms across the globe." Hunter Point further distinguishes itself in the market by emphasizing "the collective expertise of its senior leadership team, composed of seasoned investors and business builders, to help GPs achieve their long-term business objectives faster and with more certainty."

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403852

9

45. Hunter Point's $848 Million proposal was ceremoniously presented to all three of the partners at an in-person Saturday morning breakfast at the exclusive Jean-Gorges restaurant in Columbus Circle in New York. The theatrics and ceremony were not happenstance, but intentional by Hunter Point to entice the three partners to launch and build this business.

## V. Defendants Scheme to Oust Mr. Lee from Buffalo Point

46. Greed is a powerful force. Soon after Hunter Point presented the vast financial benefits of the partnership between Buffalo Point and Hunter Point, Defendants Golaszewski and Swentzel began to orchestrate a scheme to oust Mr. Lee to fatten their own pockets.

47. They did so even though it was Mr. Lee who conceived of Buffalo Point, invited Mr. Golaszewski and Mr. Swentzel to join it, established and developed the partnership with Hunter Point, and who served as lead representative throughout the negotiations. Nevertheless, Defendants Golaszewski and Swentzel negotiated behind Mr. Lee's back to ensure that only they would reap the massive financial benefits of Hunter Point's $848 Million proposal.

48. A few days later, on April 30, 2022, Mr. Swentzel spoke with Mr. Sabin outside the presence of Mr. Lee. Upon information and belief, Mr. Swentzel disclosed to Mr. Sabin that Defendants Golaszewski and Swentzel were planning to oust Mr. Lee from Buffalo Point.

49. Then, over the weekend of May 7-8th, 2022, Mr. Golaszewski had a call with Mr. Sabin further concerning, upon information and belief, the plan to oust Mr. Lee.

50. At all times, Mr. Lee was unaware that both his partners and Clifford Chance were discussing his clandestine removal from Buffalo Point behind his back.

51. Upon information and belief, Messrs. Golaszewski and Swentzel, and Clifford Chance formed an agreement not to alert Mr. Lee that he was being ousted from Buffalo Point.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

52. Without any knowledge that he was being worked out of launching the business that he had spent that last year creating with his "partners," Mr. Lee continued the course, including having dinner and drinks with other business executives at Hunter Point.

53. On May 25, 2022, Mr. Lee expected to attend a meeting with Golaszewski, Swentzel and Hunter Point that he had been invited to by Mr. Kalichstein. However, on the morning of May 25, 2022, Mr. Lee received a surprise call from Golaszewski and Swentzel, in which they finally disclosed that they had surreptitiously ousted him from launching the highly lucrative business that they had collectively developed over the last year.

54. The next day, on May 26, 2022, Mr. Sabin responded to a prior email from Mr. Lee and stated: "In light of the outcome, I don't want to charge you for any work…" By "the outcome," Mr. Sabin meant Golaszewski and Swentzel's ouster of Mr. Lee from Buffalo Point, which Defendants and Mr. Sabin had been aware of, but failed to disclose to Mr. Lee until then.

55. In his May 26, 2022 email, Mr. Sabin also attached a proposed "amendment" to the February 21, 2022 Engagement Letter, in which Clifford Chance sought to (i) obtain a retroactive conflicts waiver vis-à-vis Mr. Lee and his two partners, and (ii) terminate its representation of Mr. Lee. Clifford Chance further offered to forego its fees and expenses.

56. Notably, there was no strategic value to suddenly and secretly remove Mr. Lee from Buffalo Point. Instead, Defendants perpetrated this act of treachery solely to stuff their own pockets by over $140 Million of value apiece at the expense of their "partner," Mr. Lee.

57. Defendants Golaszewski and Swentzel then took steps to try to cover their tracks by destroying a substantial amount of the evidence of their communications with Mr. Lee about Buffalo Point, which had been conducted on the "candlelit dinners" group chat on the Signal

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 405862

messengering app service. Defendants Golaszewski and Swentzel destroyed these communications with Mr. Lee to deprive him of additional evidence regarding their partnership/joint venture and to thwart his ability to hold them accountable for their betrayal.

58. On March 2, 2023, Hunter Point announced that it had launched a "GP Financing Solutions business" led by none other than Defendants Golaszewski and Swentzel.

## COUNT ONE
## Breach of Partnership Agreement

59. Plaintiff repeats and re-alleges Paragraphs 1 through 58 as if fully set forth herein.

60. Mr. Lee, Mr. Golaszewski and Mr. Swentzel intentionally and voluntarily entered into a valid and enforceable agreement to form a partnership for profit known by them as Buffalo Point. Indeed, from the beginning, Lee, Golaszewski and Swentzel formed a partnership to "launch[] a portfolio and GP finance firm…" The three partners used language evidencing that type of partnership and joint venture, with words and phrases such as "three founding partners," "partners," "team," "three existing management team members," who were being represented by the global law firm of Clifford Chance "jointly" and "collectively."

61. In addition, both Clifford Chance and Hunter Point gave the parties' venture/partnership a codename, "Project Fremen" and "Project Candle," respectively.

62. The three partners agreed that (i) they would jointly control and manage Buffalo Point; (ii) they would share in the profits and losses of Buffalo Point; and (iii) they would contribute their property, money, efforts, skill and/or knowledge to develop and advance Buffalo Point and partner Buffalo Point with a potential strategic partner, such as Hunter Point Capital.

63. For example, as alleged above, the partners shared joint control over the enterprise. While the partners often relied on Mr. Lee to serve as the "quarterback" or "lead

representative" of the venture, the partners nevertheless shared joint control over the direction of their efforts to build and launch their portfolio and GP finance business, including, but limited to, the selection of a potential strategic partner, such as Hunter Point Capital.

64. Likewise, as alleged above, the three partners combined their financial resources, skill, effort and knowledge to make the venture a success. Each member added value and brought different sets of skills and experiences to the table. The partners sought to take advantage of Mr. Lee's fundraising and investor relations expertise in this area combined with Golaszewski and Swentzel's transactional experience. The combination of these skills and roles is evident in the detailed presentation materials and assigned speaking roles that the partners agreed upon from the outset. The partners also jointly and collectively retained Clifford Chance.

65. The partners agreed to share profits and losses. For example, the partners met among themselves and agreed to share equally in their portfolio and GP finance firm. And after months of discussions, Hunter Point's proposal, in fact, treated "the three existing management team members" equally with respect to compensation, share of net fees, and equity. The partners also agreed to share equally in the costs and expenses for Clifford Chance's services.

66. As partners, Defendants Golaszewski and Swentzel entered into a fiduciary relationship with Mr. Lee to act as trustees toward each other and the partnership and owed fiduciary duties to Mr. Lee including, the utmost duty of undivided and undiluted loyalty, the duty to act in the best interests of Mr. Lee, the duty to act in good faith, and the duty to avoid situations in which their personal interests possibly conflicted with the interest of Mr. Lee.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

67. Defendants Golaszewski and Swentzel breached the parties' partnership agreement by placing their personal interests ahead of the partnership by ousting Mr. Lee from Buffalo Point for their own personal benefit without Mr. Lee's approval or consent.

68. Mr. Lee has fully performed his obligations under the parties' agreement.

69. As a result of Defendant Golaszewski and Swentzel's breaches, Mr. Lee has suffered substantial damages in an amount to be determined at trial.

## COUNT TWO
### (Breach of Joint Venture Agreement)

70. Plaintiff repeats and re-alleges Paragraphs 1 through 69 as if fully set forth herein.

71. Mr. Lee, Mr. Golaszewski and Mr. Swentzel intentionally and voluntarily entered into a valid and enforceable agreement to form a joint venture codenamed Buffalo Point.

72. As joint venturers, Lee, Golaszewski and Swentzel agreed to (i) jointly control and manage Buffalo Point; (ii) share equally in the profits and losses of Buffalo Point; and (iii) contribute their property, money, efforts, skill and/or knowledge to develop and advance Buffalo Point and partner Buffalo Point with a potential strategic partner, such as Hunter Point Capital.

73. As joint venturers, Defendants Golaszewski and Swentzel entered into a fiduciary relationship with Mr. Lee to act as trustees toward each other and the joint venture and owed fiduciary duties to Mr. Lee including, the utmost duty of undivided and undiluted loyalty, the duty to act in the best interests of Mr. Lee, the duty to act in good faith, and the duty to avoid situations in which their personal interests possibly conflicted with the interest of Mr. Lee.

74. Defendants Golaszewski and Swentzel breached the parties' joint venture agreement by placing their personal interests ahead of the joint venture by ousting Mr. Lee from Buffalo Point for their own personal benefit without Mr. Lee's approval or consent.

BROWN RUDNICK LLP
185 ASYLUM STREET
HARTFORD, CT 06103
(860) 509-6500
JURIS NO. 403862

75. As a result of Defendants Golaszewski and Swentzel's breaches, Mr. Lee has suffered substantial damages in an amount to be determined at trial.

## COUNT THREE
### Breach of Fiduciary Duty

76. Plaintiff repeats and re-alleges Paragraphs 1 through 75 as if fully set forth herein.

77. Lee, Golaszewski and Swentzel intentionally and voluntarily entered into a valid and enforceable agreement to form a partnership and/or joint venture codenamed Buffalo Point.

78. As partners and/or joint venturers, Defendants Golaszewski and Swentzel entered into a fiduciary relationship with Mr. Lee to act as trustees toward each other and the partnership/joint venture and owed fiduciary duties to Mr. Lee including, the utmost duty of undivided and undiluted loyalty, the duty to act in the best interests of Mr. Lee, the duty to act in good faith, and the duty to avoid situations in which the personal interests of Defendants Golaszewski and Swentzel possibly conflicted with the interests of Mr. Lee.

79. However, Mr. Golaszewski and Mr. Swentzel breached these duties when they engaged in a scheme to oust Mr. Lee from Buffalo Point for their own personal benefit.

80. Mr. Golaszewski and Mr. Swentzel's actions were entirely in their self-interest and were an intentional and wanton violation of Mr. Lee's rights.

81. As a result of Defendant Golaszewski and Swentzel's breaches, Mr. Lee has suffered substantial damages in an amount to be determined at trial, as well as punitive damages and his reasonable attorney's fees and expenses.

**WHEREFORE**, Plaintiff respectfully request a judgment from the Court:

(i) for damages in an amount to be determined at trial;

(ii) punitive damages;

(iii) for the award of pre and post judgment interest on Plaintiff's damages;

(iv) for the award of Plaintiff's reasonable legal fees and expenses;

(v) granting such other and further relief as this Court may deem just and proper.

Dated: March 10, 2023

          **PLAINTIFF,**
          **Daniel Lee**

          By: _____
          Dylan J. Kletter
          Anthony J. Boccamazzo
          Brown Rudnick LLP
          185 Asylum Street
          Hartford, CT 06103-3402
          Tel: (860) 509-6500
          Fax: (860) 509-6501
          dkletter@brownrudnick.com
          aboccamazzo@brownrudnick.com
          Juris No. 403862

          *Attorneys for Plaintiff*

| | | |
|---|---|---|
| **RETURN DATE: MAY 9, 2023** | : | **SUPERIOR COURT** |
| | : | |
| **DANIEL LEE** | : | **J.D. OF STAMFORD** |
| | : | **AT STAMFORD** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **RICHARD GOLASZEWSKI AND STEPHEN SWENTZEL** | : | **MARCH 10, 2023** |
| | : | |
| Defendants. | : | |

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is in excess of $15,000.00, exclusive of interests, costs and attorneys' fees.

Dated: March 10, 2023

PLAINTIFF,
Daniel Lee

By: _____
Dylan P. Kletter
Anthony J. Boccamazzo
Brown Rudnick LLP
185 Asylum Street
Hartford, CT 06103-3402
Tel: (860) 509-6500
Fax: (860) 509-6501
dkletter@brownrudnick.com
aboccamazzo@brownrudnick.com
Juris No. 403862

*Attorneys for Plaintiff*