UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL LEE,<br><br>        Plaintiff,<br><br>  -against-<br><br>RICHARD GOLASZEWSKI, et al.,<br><br>        Defendants. | **OPINION AND ORDER**<br><br>23-CV-10695 (PMH) |

PHILIP M. HALPERN, United States District Judge:

  Daniel Lee ("Plaintiff") initiated this action against Richard Golaszewski ("Golaszewski") and Stephen Swentzel ("Swentzel" and together, "Defendants") on March 10, 2023 in the State of Connecticut Superior Court, Stamford-Norwalk Judicial District. (Doc. 1-1, "Compl."). Plaintiff asserts claims of breach of an oral partnership agreement, breach of a joint venture agreement, and breach of fiduciary duty. (*Id.*). Defendants removed the action to the United States District Court for the District of Connecticut on March 31, 2023. (Doc. 1).

  Defendants, on May 3, 2023, moved in the District of Connecticut to dismiss, or alternatively, to transfer the case to the Southern District of New York. (Doc. 11). The motion to transfer venue was granted (Doc. 32), and the action was assigned to this Court on December 7, 2023 (Doc. 33). Defendants, in accordance with this Court's December 22, 2023 order (Doc. 34), filed their Answers to the Complaint on January 5, 2024 (Doc. 35; Doc. 36) and continued to engage in discovery.

  Defendants served their motion for summary judgment pursuant to the briefing schedule set by the Court and filed, in accordance with the Court's Individual Practices, unredacted versions of their motion papers under seal and redacted versions available for public viewing. (Doc. 79;

Doc. 81; Doc. 83; Doc. 84; Doc. 89, "Def. Br"; Doc. 90, "56.1").[1] Plaintiff opposed Defendants' motion (Doc. 85, "Pl. Br."), and the motion was fully briefed with the filing of Defendants' reply papers (Doc. 86; Doc. 87). Plaintiff, joined by Defendants, requested oral argument on the motion. (Doc. 88).

For the reasons set forth below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendants' Rule 56.1 Statement and Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

Plaintiff and Defendants were employed by the international private equity firm 17Capital LLP ("17Capital"). (Compl. ¶ 10; Doc. 35 ¶ 10; Doc. 36 ¶ 10). From March 2020 through April 22, 2022, Plaintiff was employed at 17Capital as the Head of Fundraising and Investor Relations, North America. (56.1 ¶ 3). Defendant Golaszewski was a Managing Director at 17Capital, where he co-led the U.S. investment team and sourced and executed preferred equity and Net Asset Value ("NAV") transactions. (*Id.* ¶ 1). Defendant Swentzel was also a Managing Director at 17Capital, where he co-led the U.S. investment team and sourced and executed preferred equity and NAV transactions. (*Id.* ¶ 2). The parties refer to the market embracing preferred equity and NAV transactions as "GP financing solutions." (*See, e.g.*, *id*. ¶ 4).

Plaintiff, in January or February 2021, decided he wanted to leave 17Capital and drafted a memo that proposed to start a GP financing solutions business outside of 17Capital. (*Id.*). While

---

[1] The unopposed motion to seal is granted. The Court cites to the redacted versions of the motion papers that are available for public viewing access.

on a business trip to Florida in or about February 2021, Plaintiff first mentioned to Golaszewski the idea of doing a NAV lending and preferred equity business outside of 17Capital. (*Id.* ¶ 5). On April 5, 2021, Plaintiff invited Defendants to dinner at The Brook, a private club where Plaintiff was a member, to discuss his business idea. (*Id.*). Plaintiff alleges that he and Defendants agreed to form a partnership at some point prior to the dinner at The Brook and that they agreed to share profits and losses. (Compl. ¶¶ 13, 60-65; 56.1 ¶ 6). Plaintiff and Defendants never entered into a written partnership agreement. (56.1 ¶ 9).

On May 13, 2021, Plaintiff sent his resume, a copy of the memo, and an investment opportunity to Michael Arpey, President of Hunter's Point Capital ("HPC"), who in turn forwarded the memo to Mssrs. Kalichstein and Goodman—both of whom were employed at HPC. (*Id.* ¶¶ 19, 21). HPC was interested in a GP financing solutions business. (*Id.* ¶ 23).

In late January 2022, 17Capital's impending sale became public knowledge. (*Id.* ¶ 26). On February 21, 2022, Plaintiff and Defendants engaged the law firm of Clifford Chance to "advise [them] . . . in connection with the potential separation from 17Capital and future management equity and governance arrangements with [HPC], to be known as 'Project Fremen'. . . ." (*Id.* ¶ 31, Exs. P, 8). In March 2022, Oaktree announced that it would acquire a majority stake in 17Capital. (*Id.* ¶ 36).

Plaintiff was terminated by 17Capital on April 22, 2022. (*Id.* ¶ 47). On May 2, 2022, HPC sent offer letters of employment to Golaszewski and Swentzel. (*See id.*, Exs. X, Y, 75, 76). Plaintiff takes the position that Defendants schemed to oust him from a partnership in the GP financing solutions space—interchangeably codenamed Buffalo Point, Project Fremen, and Project Candle (*see* Compl. ¶ 1)—and took an opportunity with HPC that should have included him as a partner. (*See generally* Pl. Br.). Defendants take the position that they simply accepted at-will employment

offers as individuals from HPC and never agreed to form a partnership or joint venture with Plaintiff. (*See generally* Def. Br.).

This litigation followed.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[2] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023); *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at * 4 (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly

5

granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

## ANALYSIS

I. <u>First and Second Claims for Relief: Breach of Partnership and Breach of Joint Venture</u>

Plaintiff's First Claim for Relief asserts a breach of partnership, and the Second Claim for Relief asserts a breach of joint venture. These claims are "closely intertwined" under New York law.[3] *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004); *see also Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001) ("Under New York law joint ventures are governed by the same legal rules as partnerships because a joint venture is essentially a partnership for a limited purpose."). "The elements required to prove the existence of each enterprise are also similar." *Kidz Cloz, Inc.*, 320 F. Supp. 2d at 171.

Courts may, in the absence of a written partnership agreement, sometimes impose a "partnership in fact" based on "conduct, intention, and relationship between the parties." *Brodsky v. Stadlen*, 526 N.Y.S.2d 478, 479 (2d Dep't 1988). To determine whether to impose a partnership in fact, courts consider the following factors: (1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint management and control, (5) joint liability to creditors, (6) intention of the parties, (7) compensation, (8) contribution of capital, and (9) loans to the organization. *Id*. at 479.

Likewise, a plaintiff pleading the existence of a joint venture must establish that: (1) two or more parties entered an agreement to create an enterprise for profit, (2) the agreement evidences the parties' mutual intent to be joint venturers, (3) each party contributed property, financing, skill,

---

[3] The parties' briefs all assume that New York substantive law governs Plaintiff's claims. If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is, of course, sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

knowledge, or effort to the venture, (4) each party had some degree of joint management control over the venture, and (5) there was a provision for the sharing of both losses and profits. *See Itel Containers Int'l Corp. v. Atlanttrafik Express Service, Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990); *see also Price v. Gast*, No. 98-CV-07769, 2000 WL 369381, at *12 (S.D.N.Y. Apr. 11, 2000) ("[E]ven if it is assumed that the Oral Agreement was made, it is doubtful that it formed a joint venture. In New York, in order to form a joint venture, all of the [foregoing] requirements must be met.").

"[S]ome of the[ ] [factors] weigh more heavily than others." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 587 (S.D.N.Y. 2022). "An indispensable essential of a contract of partnership or joint venture, both under common law and statutory law, is a mutual promise or undertaking of the parties to share in the profits of the business and submit to the burden of making good the losses." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003); *Mallis v. Bankers Tr. Co.*, 717 F.2d 683, 690 (2d Cir. 1983) (explaining that the "crucial element of a joint venture" is an agreement to "submit to the burden of making good the losses").

Plaintiff argues that the record evidence demonstrates issues of fact precluding summary judgment on the first two claims for relief as regards four factors: (1) the parties intended to enter into a partnership, (2) joint control and management of the business, (3) sharing of the profits and losses, and (4) combination of property, skill or knowledge. (Pl. Br. at 9-14).

Plaintiff testified that the parties formed the partnership/joint venture at some point prior to their dinner at The Brook to build and launch a GP financing solutions business that would carry on indefinitely and cites evidence he claims corroborates the parties' intention. (56.1 ¶ 6). Defendants, of course, deny they formed a partnership with Plaintiff. (*Id.* ¶ 7). Plaintiff also testified the partnership was comprised of "[o]ur collective knowledge and experience in the market that we were seeking to build a business in that made us attractive partners." (*Id.*, Ex. 21 at

7

17:21-18:3). Defendants are silent on this factor. Construing the foregoing facts in the light most favorable to Plaintiff as the non-movant, these facts could lead a jury to find the existence of two of the factors courts consider: a combination of skill and knowledge and the intention of the parties. *See, e.g.*, *Basri v. Gordon*, No. 23-CV-01170, 2025 WL 949578, at *8 (S.D.N.Y. Mar. 28, 2025). In other words, Plaintiff has offered evidence demonstrating genuine disputes of material fact as regards only two factors that courts consider in determining whether to impose a partnership in fact or the existence of a joint venture. In any event, and as discussed below, the existence of fact disputes as to these two factors does not overcome the utter failure of proof as to other, indispensable essential elements of Plaintiff's claims.

Plaintiff points to evidence that he contends suggests the parties were "holding themselves out as partners" to third parties. Specifically, Plaintiff cites an e-mail from Swentzel to Scott Kapnick and Angelika Eberl—of the firm HPS Partners, a prospective employer—to which he copied Plaintiff and Golazewski, noting his interest in "learn[ing] more about how partnering together could work." (56.1, Ex. 23). Plaintiff also cites the deposition testimony of the Rule 30(b)(6) witness for Oak Hill Advisors, William Bohnsack, wherein he explained his understanding that Plaintiff and Defendants "saw real value in the three of them building a business somewhere else" outside of 17Capital. (*Id.*, Ex. 24 at 43:17-44:1). Plaintiff also cites Mr. Bohnsack's e-mail that was directed to him and Defendants: "We came away from our time together enthusiastic about the opportunity for partnering together. The market opportunity, the complementary nature of our businesses and the cultural fit all line up very well." (*Id.*, Ex. 25). None of this evidence disposes of the issue; and at best creates an issue of fact as to the intention of the parties.

Plaintiff also cites, as evidence that the three were considered a partnership by other entities, the "codenames" given to them by Clifford Chance and HPC—"Project Fremen" and "Project Candle," respectively—positing that the use of codenames is evidence of their partnership. (*See, e.g.*, *id.*, Exs. 8, 13, 42 at 128:16-129:17, 132:21-23). Of course, code names alone are not evidence of the existence of a partnership or joint venture. Plaintiff points out that the Clifford Chance engagement letter itself uses the word "partners." (*Id.*, Ex. 8 ("[W]e will be taking instructions from one single representative of the partners[.]")). The engagement letter is, however, signed by each individual in their individual capacity, and not as legal partners. (*Id.*, Ex. 8). No partnership or joint venture entity signed the lawyer's retainer letter. (*Id.*). It is also undisputed that the firm was never asked to draft a partnership agreement. (*Id.*, Ex. C at 244).

Even if all the foregoing is evidence that the parties held themselves out as partners to third parties, "calling an organization a partnership does not make it one." *Brodsky*, 526 N.Y.S.2d at 480; *Toretto*, 583 F. Supp. 3d at 587. To the extent this evidence corroborates Plaintiff's testimony about the parties' intention to enter into a partnership, as previously stated, Plaintiff has demonstrated fact disputes as to that factor (the parties' intention to be partners or joint venturers). But the inquiry does not end there as the other requirements for a partnership and/or joint venture must be considered.

With respect to the joint control or management factor, Plaintiff does not dispute that the alleged partnership did no business and had no employees. (56.1 ¶¶ 11-12; Pl. Br. at 16). Plaintiff argues that the parties drafted materials to market to prospective private equity firms, divided up roles and responsibilities, and drafted "Buffalo Point Introduction" talking points and assigned speaking roles. (Pl. Br. at 11-12). The evidence he cites in support includes his own email and the memo he drafted and circulated to Defendants (56.1, Ex. 5); and an email from Swentzel with

9

additions to the talking points, in which Swentzel states: "We will leave it to you, Dan, to qb the chat" (*id.*, Ex. 6). Plaintiff also cites the Clifford Chance engagement, which identified him as the representative from whom the firm would be taking instructions. (Pl. Br. at 12; 56.1, Ex. 8). Based on the evidence cited by Plaintiff, there is no genuine dispute as to the joint control and management factor, as the evidence demonstrates an understanding that Plaintiff was at least primarily in charge of the "marketing to prospective equity firms" and instructing counsel concerning any future negotiations with HPC, weighing against any finding of *joint* management or control. *See Basri*, 2025 WL 949578, at *9 (no genuine dispute as to joint control or management factor where record "evinc[ed] an understanding that Gordon was exclusively (or at least primarily) in charge of the mask project"). Additionally, this record evidence does not support a finding of joint management or control over the hypothetical partnership/joint venture engaging in business with a third party. Indeed, there is an utter failure of proof on this score.

Importantly, the record is also devoid of any evidence indicating that the parties "agreed to, or actually did, share losses (or even profits)." *Id*. While Plaintiff testified that the partners agreed to share all the setup costs of the business (56.1, Ex. 21 at 18:19-21:20) and cites Golaszewski's testimony that the parties agreed to equally share the expenses of Clifford Chance (*id.*, Ex. 9 at 221:18-222:10), sharing expenses differs from sharing losses, which is what is "required to establish a partnership." *Vogel v. TakeOne Network Corp.*, No. 22-CV-03991, 2023 WL 5276857, at *5 (S.D.N.Y. Aug. 16, 2023); *see also Fisher v. Tice*, 692 F. App'x 54, 57 (2d Cir. 2017) (merely agreeing to share expenses is insufficient to show an agreement to share losses). "[T]he overwhelming weight of authority demonstrates that the absence of any agreement to share the burden of losses is fatal to a partnership claim." *Oppedisano v. Zur*, No. 20-CV-05395, 2024 WL 967260, at *7 (S.D.N.Y. Mar. 5, 2024) (collecting cases).

"If there was no agreement as to the manner in which the parties were to share in the profits and the losses, the agreement did not create a joint venture." *Jobanputra v. Kim*, No. 21-CV-07071, 2024 WL 2055061, at *6 (S.D.N.Y. May 8, 2024). It is clear, as previously stated, there was no agreement as to the sharing of losses which alone is fatal to Plaintiff's First and Second Claims for Relief.

With respect to the sharing of profits, Plaintiff appears to argue that HPC's April 9, 2022 proposal entitled "Project Candle" (56.1, Ex. 10) demonstrates that Plaintiff and Defendants agreed to be treated equally. (Pl. Br. at 18-19). That proposal, which was prepared by HPC and not by Plaintiff or Defendants, estimates a "5-Year Value" and "10-Year Value" to "Candle Management," which is defined as Plaintiff and Defendants. (56.1, Ex. 10). The proposal does not reflect how compensation would be split among Plaintiff and Defendants, and it is not itself an agreement among Plaintiff and Defendants. (*Id.*). Further, the executive chairman of HPC testified concerning the proposal, his understanding that profits were "never going to be split equally" among Plaintiff and Defendants. (*Id.*, Ex. K at 131:11-132:11; *see also id.* ¶ 45), and Plaintiff does not cite any record evidence setting forth what any split would have been. Based on the evidence cited by Plaintiff, the parties did not agree as to how profits were to be handled. The lack of support as to the detail of the terms—the manner in which profits were to be shared—renders Plaintiff's say-so inadequate to generate an issue of fact as to this factor.

Notably, Plaintiff does not make any argument as to four other *Brodsky* factors: contribution of capital, joint liability to creditors, loans, and compensation. (*See generally* Pl. Opp.). It is undisputed that the parties never agreed to make any capital contributions to the purported partnership. (56.1 ¶ 13). It is also undisputed that the alleged partnership had no creditors or loans, and there is no evidence in the record they discussed or had any agreement as to liability

11

to creditors. (*Id.* ¶¶ 11, 15). There is no genuine dispute that the alleged partnership did not have: a bank account, an office, a website, an email address, an accountant, books and records, stationary, a logo, a line of credit, debt, a telephone number, a payroll company, a chief financial officer, a human resources director, employees, contracts with other individuals or businesses, an agent for service of process, a federal or state tax ID number, an employee handbook, or any profits. (*Id.* ¶ 11). Nor is there any genuine dispute that the alleged partnership did not: file a tax return, register to do business in New York or any other state, register with the Securities and Exchange Commission or take steps to prepare such a registration, and never prepared a Form ADV. (*Id.* ¶ 12). As to the final *Brodsky* factor to be considered in the nine-factor analysis concerning ownership of partnership assets, the record is devoid of evidence of partnership-owned assets. (*Id.* ¶ 14).[4]

Simply put, even crediting Plaintiff with finding a disputed issue of fact as to two factors (a combination of skill and knowledge and the intention of the parties), the record establishes that there is no genuine disputed fact that the other factors courts consider have not been satisfied.[5] In light of this failure of proof, summary judgment dismissing these claims is appropriate.[6] *Basri*,

---

[4] Plaintiff disputes that the partnership did not own property, arguing that the partnership owned intellectual property in the form of the parties' "collective knowledge and experience." (56.1 ¶ 12; Pl. Br. at 13). Plaintiff has not provided any authority to support the proposition that each partners' individual knowledge and experience are business assets owned by a partnership for purposes of this analysis—especially absent proof of such an agreement. In any event, even if such "collective knowledge and experience," were sufficient to constitute business assets, this factor would nevertheless fail to tip the scales in Plaintiff's favor in light of the Court's analysis as to the remaining factors herein.

[5] The Court notes that contribution of property, financing, skill, knowledge, or effort is a factor considered in connection with the joint venture analysis, and is not specifically a *Brodsky* factor. With respect to the other factors considered in the joint venture analysis, there is significant overlap with the *Brodsky* factors and, as discussed herein, there is a complete failure of proof as to the factor requiring a provision for the sharing of both losses and profits. *Itel Containers Int'l Corp.*, 909 F.2d at 701.

[6] Even assuming that a valid partnership or joint venture existed, Defendants also met their burden to establish the absence of any disputed issue of fact as to any breach of such agreement. It is undisputed that the alleged partnership was intended to carry on indefinitely. (56.1 ¶ 6). Where there is no term of duration,

2025 WL 949578, at *9 (granting summary judgment where record did not reflect agreement to share losses, profits, capital contributions, or joint control or management); *Oppedisano*, 2024 WL 967260, at *7 (granting summary judgment on oral partnership claim because there was no evidence the parties agreed to share losses); *Moses v. Savedoff*, 947 N.Y.S.2d 419, 423 (1st Dep't 2012) (finding no oral partnership agreement because, among other things, plaintiff did not agree to share losses and made no capital contributions).

In sum, the proof adduced makes clear that three at-will employees of 17Capital intended to find employment elsewhere and possibly together; not that they formed a partnership or joint venture to do business with other entities. Dispositive proof of an agreement to form a partnership/joint venture is utterly lacking and the evidence in the record fails to create a genuine dispute of material fact as to the indispensable elements of the claims.

Accordingly, Defendants' motion for summary judgment dismissing the First and Second Claims for Relief is granted.

## II.     Third Claim for Relief: Breach of Fiduciary Duty

Plaintiff's Third Claim for Relief alleges that Defendants breached their fiduciary duty to Plaintiff by ousting him from the alleged partnership for their own personal benefit. (Compl. ¶¶ 76-81). A fiduciary relationship exists under New York law "'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99-CV-04643, 2000 WL 1290608, at *4 (S.D.N.Y. Sept. 12, 2000). The failure to establish the existence of an enforceable joint venture or partnership agreement is fatal to establishing the existence of a fiduciary obligation.

---

the partnership is one at-will as a matter of law and therefore can be dissolved "at any time" and "without legal consequence." *Kidz Cloz, Inc.*, 320 F. Supp. 2d at 175-76. There is no dispute that Defendants terminated any purported partnership relationship with Plaintiff on May 25, 2022. (56.1 ¶ 56).

13

"Because [Plaintiff] failed to establish the existence of a partnership or joint venture, this [breach of fiduciary duty] claim also fails." *Kidz Cloz, Inc.*, 320 F. Supp. 2d at 176; *see also Orderline Wholesale Distribs., Inc. v. Gibbons, Green, van Amerongen, Ltd.*, 675 F. Supp. 122, 128 (S.D.N.Y. 1987) ("Since, as discussed above, plaintiffs fail to make a showing sufficient to establish the existence of an enforceable joint venture or partnership agreement with GGvA, they also fail to make a showing sufficient to establish the existence of a fiduciary obligation to them by GGvA—an element essential to their third claim for relief.").[7]

Accordingly, Defendants' motion for summary judgment dismissing the Third Claim for Relief is granted.

---

[7] Even assuming, *arguendo*, that Plaintiff had established the existence a fiduciary relationship, this claim would still fail. As noted *supra*, the purported partnership was one at-will and, upon dissolution of a partnership at will, a partner's only remedy is an accounting. *See Ebker v. Tan Jay Int'l Ltd.*, 741 F. Supp. 448, 468 (S.D.N.Y. 1990) ("[T]he sole remedy available to [plaintiff] as a partner at will is an accounting[.]"), *aff'd sub nom. Ebker v. Tan Jay*, 930 F.2d 909 (2d Cir. 1991). Plaintiff did not plead or prove that he demanded an accounting or that Defendants had rejected such a demand. *L. Off. of J Bacher, PLLC v. Saftler*, 201 N.Y.S.3d 45, 47 (1st Dep't 2023) (summary judgment warranted on accounting claim where plaintiff failed to demand an accounting). In any event, even if Plaintiff had requested an accounting, there are no assets to account for. The undisputed evidence establishes that the alleged partnership did no business and had no profits. (56.1 ¶¶ 11-12). Where the alleged partnership has no joint assets of its own, no goodwill, and no compensation due the partners, there are no assets to account for and, therefore, no available relief. *See Kidz Cloz, Inc.*, 320 F. Supp. 2d at 176–77; *Saltzstein v. Payne, Wood & Littlejohn*, 740 N.Y.S.2d 95, 96 (2d Dep't 2002) (granting motion for summary judgment dismissing plaintiff's cause of action for share of value of defendant's goodwill where "[t]he partnership agreement at issue did not specify that good will was a firm asset, no consideration was paid for good will when new partners joined, no amounts were paid or given on account of good will, and the firm's financial statements did not reflect any good will").

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 79) is GRANTED. The motion to seal (Doc. 78) is GRANTED, such that the unredacted versions of the motion papers shall remain under seal (Doc. 80; Doc. 81; Doc. 82; Doc. 83; Doc. 84; Doc. 87), and the redacted versions shall remain the publicly-filed versions (Doc. 86; Doc. 89; Doc. 90). Because the Court finds oral argument unnecessary, the motion for oral argument (Doc. 88) is DENIED as moot.

The Clerk of Court is respectfully requested to terminate the pending motion sequences (Doc. 78; Doc. 79; Doc. 88) and close this case.

SO ORDERED.

Dated: White Plains, New York
      July 24, 2025

                                                          _____
                                                          Philip M. Halpern
                                                          United States District Judge